UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| IK YACHT DESIGN, INC., | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00394-LEW |
| | ) | |
| M/V ALMOST THERE (O.N. 1252895) | ) | |
| (HIN: HATDH521A898), her engines, | ) | |
| boilers, tackle, appurtenances, electronics, | ) | |
| etc. in rem, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON IN REM DEFENDANT M/V ALMOST THERE'S MOTION TO DISMISS OR TRANSFER VENUE**

Now before me is Vessel-Owner 15 Year Plan, LLC, appearing specially on behalf of the Defendant Vessel M/V Almost There's motion to dismiss or transfer venue of this case from the District of Maine to the Southern District of Florida (ECF No. 16). For the reasons that follow, I will GRANT the motion.

### BACKGROUND

On August 27, 2019 Plaintiff IK Yacht Design Inc. filed an *in rem* action in this Court for unsatisfied admiralty and maritime liens against the M/V Almost There (O.N. 1252895) (HIN: HATDH521A898) for debts in excess of $194,272.89, plus ongoing interest and penalties. The Almost There is a 74-foot Hatteras Motor Yacht built in 1998, and owned by 15 Year Plan, LLC, a Florida limited liability company owned, in turn, by Florida residents Andrew and Sherry Sturner.

At bottom, this is a garden-variety contract dispute arising out of work IK Yacht Design performed for the Sturners on the Almost There between January 1 and June 20, 2019. Without having settled the dispute, the Sturners sailed the Almost There to Maine this August. Plaintiff then located the Vessel in this District and arrested her to foreclose the necessaries lien in accordance with the Supplemental Rules for in rem actions and the Commercial Instruments and Maritime Liens Act, 46 U.S.C. §§ 31431-31433 (the "Lien Act"); s*ee also* F.R.Civ.P. 9(h), and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims.

## LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may "[f]or the convenience of parties and witnesses, in the interest of justice ... transfer any civil action to any other district or division where it might have been brought." This statute "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). In the exercise of that discretion, courts in the First Circuit consider not only "the convenience of parties and witnesses," but also "the availability of documents; the possibility of consolidation; and the order in which the district court obtained jurisdiction." *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000).

"The burden of proof rests with the party seeking transfer" and, ordinarily, "there is a strong presumption in favor of the plaintiff's choice of forum." *Id*. "The evidence presented by Defendant must weigh heavily in favor of transfer before this Court will

disturb" that choice. *Demont & Assocs. v. Berry*, 77 F. Supp. 2d 171, 173 (D. Me. 1999); *see also Mercier v. Sheraton Intern., Inc.*, 981 F.2d 1345, 1354 (1st Cir. 1992) (noting that "the trial court must favor the plaintiff's choice of forum: unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed").

## ANALYSIS

### 1. IN REM JURISDICTION UNDER § 1404

Because this is an *in rem* action brought in admiralty, I will pause briefly to discuss how that affects the parties' arguments concerning transfer.

Before considering whether to transfer this case, I must be certain that the transferee district would have jurisdiction to hear it. The federal change-of-venue statute allows district courts to transfer a case only "to any other district or division *where it might have been brought*." 28 U.S.C. § 1404(a) (emphasis added). Plaintiff argues the case could not "have been brought" in the Southern District of Florida because the vessel would have to be present in that District for the court to have jurisdiction. *See, e.g.*, Rule C(2)(c), Supplemental Rules for Certain Admiralty and Maritime Claims (describing that the *in rem* complaint must "state that the property is within the district or will be within the district while the action is pending."). This is true so far as it goes, but does not necessarily mean transfer is inappropriate under § 1404.

Generally speaking, a maritime lien may be enforced only through an action *in rem*—that is, by proceeding against the vessel itself. *See, e.g.*, 8-VII Joshua S. Force & Steven F. Friedell, Benedict on Admiralty § 7.01 (2017) ("Maritime liens do not exist apart from their ability to be enforced *in rem* in admiralty."); *The Rock Island Bridge*, 73 U.S.

3

(6 Wall.) 213, 215 (1867) ("The lien and the proceeding *in rem* are, therefore, correlative—where one exists, the other may be taken, and not otherwise."). As Defendants indicate, "[a]n action *in rem* ... [t]o enforce [a] maritime lien" requires court officials to "arrest ... the vessel or other property that is the subject of the action." Fed. R. Civ. P. Supp. Adm. R. C (1)(a), (3)(a)(i). The question here is whether transfer is appropriate even though Plaintiff may not have been able to bring this *in rem* action to exercise its lien in the Southern District of Florida in the first place.

The Supreme Court has resolved this issue. In *Continental Grain Co. v. The FBL-585*, the Court upheld transfer of an *in rem* action from one district to another under § 1404(a) even though the in rem action could not "have been brought" initially in the transferee District, as the vessel was not located there when the plaintiff filed suit. 364 U.S. 19, 20-21, 26-27 (1960). The Court emphasized that making physical presence of the *res* an absolute jurisdictional requirement would merely have "provide[d] a shelter for *in rem* admiralty proceedings in costly and inconvenient forums." *Id*. at 27. The Court has made clear that "[t]he fictions of in rem forfeiture were developed primarily to expand the reach of the courts and to furnish remedies for aggrieved parties." *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 87 (1992). One "purpose[] of the fiction, among others, has been to allow actions against ships where a person owning the ship could not be reached." *Continental Grain*, 364 U.S. at 23. Here, as in *Continental Grain*, "the fiction appears to have no relevance whatever in a District Court's determination of where a case can most conveniently be tried. As such, a fiction born to provide convenient forums should not be transferred into a weapon to defeat that very purpose." *Id*. at 23 (also observing that "[t]he

concept of the ship as a distinct juridical entity" is no more than "a convenient conceptual tool.").[1]

In this case, the parties jointly moved for an Order Releasing Arrested Vessel and Authorizing Deposit of Funds into the Registry of the Court as provided for in Rule E(5). (ECF No. 12). And the Vessel Owner promptly posted the bond of $291,409.33 to the Clerk, which serves as substitute for the arrested vessel and security for Plaintiff's claims. *Id.* Furthermore, the Vessel Owner is subject to the personal jurisdiction of the Southern District of Florida, and has waived any challenge to the Southern District of Florida's subject matter jurisdiction over this case. *See* Mot. To Transfer at 2. As the Supreme Court noted in *Continental Grain*, the "fiction" that a contract dispute like this can be brought *in rem* rather than *in personam* is a device to protect against absent ship-owners, and "provide convenient forums." 364 U.S. at 23. The jurisdictional fiction has no use in this case, where the ship-owners are present and the *in rem* forum is hundreds of miles from the actual dispute. Because the Supreme Court has held presence of the *res* is not a jurisdictional prerequisite for transfer of an *in rem* action under §1404(a), and the Southern District of Florida would otherwise have jurisdiction over these parties and this dispute, I will proceed to analyze whether transfer is appropriate under §1404(a).

### 2. GROUNDS FOR TRANSFER

---

[1] Other persuasive authority echoes this rule: "[i]f the *res* is absent from the district, this…jurisdictional defect can be waived if the owner of the *res* voluntarily appears" and "waive[s]" the "presence requirement." 29-704 Moore's Federal Practice—Civil § 704.02 (2017); *see also Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 187 (2d Cir. 2018)("If the requirement that a vessel be arrested is a mere matter of service of process, and a practical means of getting at the owner's property, then there is no reason that it could not be waived under appropriate circumstances.").

The Vessel Owner argues that the interests of justice and convenience of the parties would be served by transferring this case to the Southern District of Florida. This is so, because the contract dispute has no meaningful connection to Maine and all operative facts and witnesses relevant to the dispute are in Florida. Plaintiff counters that I should credit its choice of forum, and that the case could be more efficiently tried in Maine. Because I find the Vessel Owner has carried its burden, and the evidence weighs strongly in favor of transfer, I grant the motion.

First, any physical evidence relevant to this dispute is in the Southern District of Florida, not in Maine. Although a Plaintiff's choice of forum should "rarely be disturbed," this is one of those cases where the evidence is so overwhelming in favor of transfer that it is justified. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). This case arises out of a series of oral contracts for work performed on the Almost There in Florida. Two Florida companies with Florida principals entered into these contracts for necessaries; throughout the life of the contracts the Vessel was exclusively located in a Florida marina, which is still its home port; all the work underlying this dispute occurred in Florida, and was performed by Florida residents. Other evidence will likewise be in the Southern District of Florida during the pendency of this case, including the Vessel, which will need to be analyzed by experts to evaluate the quality of the work. Plaintiff does not dispute the fact that the large majority of the evidence relevant to this case is in the Southern District of Florida.

Likewise, all potential witnesses to the work Plaintiff performed on the Almost There reside in Florida. The Vessel Owner points out that Plaintiff has little or no control

over these material witnesses and cannot compel them to come to trial. Plaintiff does not refute the argument that these witnesses will be essential to this case, and are well outside this Court's subpoena power. On its side of the ledger, Plaintiff can only point to a third-party evaluator here in Maine it hired to assess the Almost There after its arrest, and the expense it would incur in bringing this witness to the Southern District of Florida. Response at 3-4. Over all, the laundry list of other witnesses and evidence in the Southern District of Florida weigh heavily in favor of transfer.

Finally, the Southern District of Florida has a much stronger connection to this controversy, especially as it is the home forum of both parties. The standard for the applicable law for a maritime lien against the Vessel is the reasonable price for the goods and services in the community where the goods and services were rendered. *See Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242 (11th Cir. 2005). The litigation of this case will require specialists and experts in the Southern District of Florida to provide this testimony. The transferee Court is also likely to have greater relative familiarity with the law underlying this contract dispute, which is yet another factor militating in favor of transfer. *See Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

Plaintiff also cites the costs associated with bringing this lawsuit—hiring local counsel, engaging the Portland, Maine-based office of the United States Marshals Service, hiring a substitute custodian with a captain and watchmen, and retaining a third-party to evaluate the Vessel Owner's claims of deficient workmanship. Response at 6. Other than the third-party evaluator, discussed above, these are all simply costs of litigating an *in rem*

7

action in this District and measures of potential damages. Plaintiff does not discount the substantial costs to litigating the case in Maine that Vessel Owner brings up in its motion, and does not plausibly argue that Maine has any particular interest in the case.[2] Apart from the cost associated with getting its third-party evaluator to the Southern District of Florida, Plaintiff has not presented any relevant evidence that the interests of justice or the convenience of the parties would be served by keeping this case in the District of Maine.

Ultimately, the decision to transfer is a matter of judicial discretion. *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 12 (1st Cir. 2009). After reviewing the evidence, I find that both the interests of justice and convenience of the parties would be served by transferring this case to the Southern District of Florida. Therefore, the Vessel Owner's motion to transfer is GRANTED.

**SO ORDERED.**

**Dated this 15th day of November, 2019.**

/S/ **LANCE E. WALKER**
**UNITED STATES DISTRICT JUDGE**

---

[2] Plaintiff incorrectly asserts that the Vessel "engaged in the summer Maine charter season" such that Maine would have an interest in the case. Response at 5. Plaintiff bases this assertion on various screenshots from the Vessel's website. *Id.* However, the Vessel's online presence shows the itinerary from Florida to Maine and back so that the owners' friends were able to plan their visits. Reply at 3 (ECF No. 19). The boat was not chartered in Maine. *Id.*